WEYERHAEUSER COMPANY, SHIPPING CONTAINER DIVISION

v.

INTERNATIONAL BROTHERHOOD OF PULP, SULPHITE AND PAPER MILL WORKERS, and Local No. 669, and Robert J. Cox.

Civ. No. 6-120.

United States District Court
D. Maine, S. D.

Dec. 23, 1960.

Roger A. Putnam, John A. Mitchell, Portland, Me., for plaintiff.

Sidney W. Wernick, Portland, Me., John A. Platz, Lewiston, Me., for defendant.

GIGNOUX, District Judge.

This matter arises upon the defendants' motion to dismiss the action for lack of jurisdiction over the subject matter.

On March 24, 1960 the plaintiff Weyerhaeuser Company, Shipping Container Division, of Westbrook, Maine, entered

into a collective bargaining agreement with the defendant Union, representing plaintiff's employees. The wage scale in this agreement was made effective retroactive to December 12, 1959, and the agreement was to continue in effect until December 12, 1960 and thereafter unless terminated by either party upon specified written notice. The agreement contained a "no strike" clause (Article XI) and provided for a typical four-step grievance procedure culminating in arbitration (Article IX).

On February 1, 1960 the defendant Cox, a member of the Union and an employee of the plaintiff, filed a grievance to the effect that although he was classified as a mobile equipment operator, he was required to do the job of "checking", which carried a higher rate of pay, and was therefore entitled to a wage adjustment of 28¢ per hour for each hour he had worked during the life of the agreement back to December 12, 1959. This grievance was processed through the first three steps of the grievance procedure and was finally denied by the plaintiff. On May 31, 1960 the Union demanded arbitration by the American Arbitration Association, the arbitrator appointed by the agreement. The plaintiff refused arbitration and on August 12, 1960 brought this suit under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, seeking a declaratory judgment that the decision of any arbitrator upon the grievance would be null and void and not binding upon the plaintiff, and requesting an order enjoining the defendants from proceeding further in any such arbitration. The defendants have countered with a motion to dismiss the action on the ground that this Court lacks jurisdiction of the subject matter.[1] The parties have agreed that the pending proceedings before the American Arbitration Association be stayed until final action by the Court upon this motion.

The pertinent provisions of the agreement with respect to arbitration read as follows:

## "Article IX

### "*Grievance Procedure*

\* \* \* \* \* \*

"*Step No. 4.* Arbitration. Grievance not settled in Step No. 3 will be referred to an impartial umpire appointed by the American Arbitration Association. Except for disputes, claims, or grievances concerning wages, any dispute, claim or grievance arising out of, or relating to this agreement shall be submitted to arbitration under the Voluntary Labor Arbitration Rules, then obtaining, of the American Arbitration Association. The parties agree to abide by the award subject to such regulations as any Federal Agency having jurisdiction may impose. The parties further agree that there shall be no suspension of work when any such arbitrable dispute arises and while it is in process of adjustment or arbitration.

"All expenses of the impartial umpire shall be borne equally by the Company and the Union. Arbitrable grievance within the meaning of this section shall consist only of dispute concerning the interpretation and application of this agreement. No arbitrator may change or modify any provisions of this agreement. No grievance originating prior to the execution of this agreement shall be arbitrable hereunder." [2]

The basic controversy between the parties, which plaintiff seeks to have deter-

---

**1.** Defendants' motion as filed also seeks dismissal for the reason that the complaint fails to state a claim upon which relief can be granted. At oral argument, counsel for the defendants waived this ground, without prejudice to their right to reassert it as a basis for dismissal following the presentation of evidence.

**2.** Although the Cox grievance was filed on February 1, 1960, the plaintiff has waived any objection to its arbitrability on the ground that the grievance originated prior to the execution of the agreement. The plaintiff has also waived any procedural irregularities in connection with the presentation of the grievance.

mined by this Court in this action is whether the Cox grievance is outside the scope of this arbitration clause, because it concerns wages and because it does not concern the interpretation and application of the agreement.

With respect to the instant motion, the plaintiff concedes that diversity of citizenship does not exist in this case and that the jurisdiction of this Court must depend upon Section 301(a) of the Labor Management Relations Act, which provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The question thus presented is whether plaintiff's complaint presents one of those "suits for violation of contracts between an employer and a labor organization" as to which Section 301(a) provides federal jurisdiction.

There has been considerable discussion concerning this question both before and since the Supreme Court's decision in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, and the courts have resolved it differently. One view holds that Section 301(a) is to be read restrictively, with emphasis on the words "suits for violation", and that a suit for a declaratory judgment is precluded by the language of the statute because it simply is not a suit for violation of a contract. This was the view of the majority of the Court of Appeals for the Sixth Circuit in the case of Mengel Co. v. Nashville Paper Products and Specialty Workers Union, 6 Cir., 1955, 221 F.2d 644, decided prior to Lincoln Mills, which has been followed in at least three cases decided in the United States District Court for the Southern District of New York since Lincoln Mills. International News Service v. Gereczy, D.C.S.D.N.Y.1958, 160 F.Supp. 5 (Murphy, J.); Wamsutta Mills v. Pollock, D.C.S.D.N.Y.1959, 180 F.Supp. 826 (Dimock, J.); Hall v. Sperry Gyroscope Company Division of Sperry Rand Corp., D.C.S.D.N.Y.1960, 183 F.Supp. 891 (Murphy, J.).

Other courts, however, have held that Section 301(a) should not be read restrictively, and that the United States District Courts have federal jurisdiction to hear an employer's complaint seeking a declaratory judgment that a grievance is not arbitrable, by virtue of the combined authority of Section 301(a), conferring jurisdiction, and the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, authorizing the procedure. Perhaps the leading exponent of this view is Mr. Justice (then Circuit Judge) Stewart dissenting in Mengel, supra, 221 F.2d at page 648. It is also the view adopted by Judge Wyzanski in New Bedford Defense Products Division, etc. v. Local No. 1113, D.C.D.Mass.1958, 160 F.Supp. 103, affirmed 1 Cir., 1958, 258 F.2d 522,[3] and by Judge Anderson in Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, D.C.D.Conn.1958, 167 F.Supp. 817, appeal dismissed, 2 Cir., 1959, 269

---

3. The Court of Appeals did not discuss the present question because it was only concerned with the District Court's action on the Union's counterclaim seeking specific performance of the arbitration agreement, of which there was clear jurisdiction under the Lincoln Mills case. Similarly, in Boston Mutual Life Ins. Co. v. Insurance Agents' International Union, 1 Cir., 1958, 258 F.2d 516; 1 Cir., 1959, 268 F.2d 556, although the plaintiff was seeking declaratory relief, the Union had filed a counterclaim seeking specific performance of the arbitration agreement. The Court of Appeals again did not discuss the present question because it was concerned with the Union's counterclaim. Moreover, it is very likely that the filing of the counterclaim in both of these cases automatically provided jurisdiction over the complaint as well as the counterclaim. See 3 Moore, Federal Practice par. 13.15 (2d Ed. 1948).

F.2d 618, and Ingraham Co. v. Local 260, D.C.D.Conn.1959, 171 F.Supp. 103.

In the absence of controlling authority,[4] it is the considered opinion of this Court that the latter view properly expresses the limits of federal jurisdiction under Section 301(a). It must be conceded that a suit which seeks a declaration that arbitration will not be binding upon a party to a collective bargaining contract, on the ground that the contract does not require the parties to arbitrate the particular dispute involved, is clearly not a suit for violation of the contract. And there can be no question that the plaintiff here has not brought a suit of the type literally described in the statute, since there can be no reasonable basis for asserting that the defendants violated any provision of their contract when they submitted the Cox grievance to arbitration. However, in this Court's opinion, the view expressed in the Mengel case too narrowly restricts the scope of the federal jurisdiction conferred by Section 301(a) and fails to take into account the purpose of the Declaratory Judgments Act and the nature of the procedure which it authorizes.

 The Declaratory Judgments Act is procedural and merely creates a new remedy; it does not confer jurisdiction. See Public Service Commission of Utah v. Wycoff Co., 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. It allows a prospective defendant to obtain a declaration of his rights in a federal court, without waiting for a prospective plaintiff to bring an ordinary action, "in a case of actual controversy within its jurisdiction * * *." 28 U.S.C. § 2201. Since Lincoln Mills, there is no question but that, if the plaintiff in the present case had chosen to disregard the arbitration proceedings and had

awaited the bringing of suit against it by the Union to compel it to proceed to arbitration, this Court would have had jurisdiction of that action. The question to be decided in such a case would have been whether the collective bargaining agreement was violated by the refusal of the plaintiff to proceed to arbitration. The same ultimate question is in issue here, and as to that question there is an actual controversy between the parties. The fact that the plaintiff, instead of the defendants, chose to litigate this question should not negative jurisdiction. As stated by Mr. Justice Stewart, dissenting in Mengel, 221 F.2d at page 648:

"That choice should be of no consequences in determining the question of jurisdiction; if a federal court has jurisdiction of a controversy it should matter not which of the parties initiates the litigation. The very purpose of the Federal Declaratory Judgment Act, as I understand it, is to enable one in appellant's position to seek a clarification of its rights in a controversy such as this."

There is nothing in the language of Section 301(a) which precludes use of the declaratory judgment procedure in cases of actual controversy which, if the parties were reversed, would fall within the jurisdiction which Section 301(a) confers.

Moreover, as pointed out by Judge Wyzanski in the New Bedford case, the more liberal view that Section 301(a) encompasses the procedures of the Declaratory Judgments Act is supported by the general policy of the Labor Management Relations Act to strengthen labor contracts by providing the federal courts as a forum for the determination by employers, labor organizations and individual employees of their legal rights under such contracts.[5]

4. See footnote 3.

5. See Textile Workers Union of America v. Lincoln Mills, supra, 353 U.S. at pages 485–546, 77 S.Ct. at pages 936–963 (Legislative History Appendix to Opinion of Frankfurter, J., dissenting). Judge Wyzanski also draws support for his conclusion from a Congressional colloquy in which Congressman Hartley, the co-author and sponsor of the Labor Management Relations Act, in reply to a question by Congressman Barden, construed

■■ This view of Section 301(a) is also consistent with the construction of the statute by the Supreme Court in *Lincoln Mills*. The Supreme Court, in holding that a suit to compel arbitration comes under Section 301(a), said that this section supplies a broad basis for federal jurisdiction of controversies involving labor agreements and authorizes the federal courts to fashion a body of federal law for the enforcement of such agreements by either party, and that the law to be applied in suits under Section 301(a) is federal law. There seems no reason to doubt that the Declaratory Judgments Act, a part of the federal procedural law, is included in the body of federal law to which the courts may look in suits under this section. It would be an unwarranted restriction, inconsistent with the spirit of Lincoln Mills, to read Section 301(a) narrowly as foreclosing the federal district courts from granting the relief authorized by the Declaratory Judgments Act. The jurisdiction of the federal courts in controversies involving labor contracts should not depend upon whether the parties seek to have their rights under such contracts determined by actions seeking damages for breaches of those contracts, by actions seeking specific performance of those contracts, or by actions seeking declarations of rights under those contracts pursuant to the procedure provided by the Declaratory Judgments Act.

As previously indicated, the defendants do not assert at this stage of the proceedings any ground for granting the instant motion other than lack of jurisdiction of the subject matter. The Court is thus not called upon at this time to deal with the ultimate question of whether the grievance presented is arbitrable, or with the further preliminary question of whether the Court or the arbitrator is to determine its arbitrability. Compare Local 201 etc. v. General Electric Co., 1 Cir., 1960, 283 F.2d 147; Boston Mutual Life Ins. Co. v. Insurance Agents' International Union, 1 Cir., 1958, 258 F.2d 516 and Local No. 149, etc. v. General Electric Co., 1 Cir., 1957, 250 F.2d 922, certiorari denied 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, with United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 and United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432. Nor is the Court now called upon to determine whether in its discretion it should grant declaratory relief prior to a determination by the arbitrator. See Public Service Commission of Utah v. Wycoff Co., supra; New Bedford Defense Products Division, etc. v. Local No. 1113, supra,

Section 302 of the House bill, predecessor to the present Section 301, as contemplating not only ordinary lawsuits for damages, but also other remedial proceedings, both legal and equitable, including "proceedings * * * under the Declaratory Judgments Act in order to secure declarations from the Court of legal rights under the contract." 93 Cong.Rec. 3656–3657. See New Bedford Defense Products Division, etc. v. Local No. 1113, supra, 160 F.Supp. at page 109. Defendants here point out, however, that the language of Section 302(a) of the House bill read as follows: "Any action for or proceeding involving a violation of an agreement between an employer and a labor organization * * *"; whereas in the final enactment of Section 301(a), this language was changed to read: "Suits for violation of contracts between an employer and a labor organization * * *." This Court has been unable to ascertain why the language which ultimately appeared in Section 301(a) was more restrictive than that used in the House bill. In the absence of some affirmative evidence of Congressional intention, this Court cannot regard this change in language as of controlling significance, especially since the language ultimately used by Congress was substantially the same as that which appeared in the original Case bill, which was passed by Congress and vetoed by the President shortly before the enactment of the present Section 301. See Textile Workers Union of America v. Lincoln Mills, supra, 353 U.S. at pages 485–512, 77 S.Ct. at pages 936–948 (Legislative History Appendix to Opinion of Frankfurter, J., dissenting).

160 F.Supp. at pages 109–110. Accordingly, the Court expresses no opinion on these questions. It holds at this time only that there is federal jurisdiction over the subject matter of this action.

For the reasons stated, the defendants' motion to dismiss for lack of jurisdiction over the subject matter of this action must be, and it hereby is, denied.