GATES, APPELLEE, *v.* DILLS, APPELLANT.

(No. 660—Decided June 12, 1967.)

*Messrs. Faust, Harrelson & Thornburgh, Messrs. Gaier & Pratt* and *Mr. Frederick D. Freed,* for appellee.
*Messrs. Pickrel, Schaeffer & Ebeling, Mr. H. Thomas Haacke, Jr.,* and *James F. Barnhart,* for appellant.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Miami County entered on a jury verdict in favor of the plaintiff for the sum of $20,000 for personal injuries sustained when he was struck by an automobile operated by the defendant.

On October 18, 1963, at approximately 9:30 p. m., the plaintiff, James Gates, age 63, was crossing College Street in Piqua.

College Street runs generally north and south and is forty feet wide from curb to curb.

At the time of the accident, Gates was walking from the east to the west side of the street, and the defendant, Irmtraud Dills, was driving her vehicle in a southerly direction.

The first assignment of error challenges the injection of insurance into the case, and the record discloses the following references to insurance during cross-examination of the plaintiff:

"Q. You remember after the accident Mrs. Dills telling you to remain quiet and not move? A. She said, 'I have insurance.'

"Q. You remember her putting your head in her lap to make you more comfortable? A. She said she had insurance and that she thought that it was a done [sic] big dog crossed the street."

Sometime later, the plaintiff testified further as follows:

"Q. And the automobile hit you in the back, that right? A. Yeah, sure didn't hit me in the stomach.

"Q. You remained unconscious? A. I come to, I heard her telling, she told me she had insurance."

The defendant, appellant herein, observes that the questions propounded to the plaintiff, appellee herein, should not have provoked answers which would introduce insurance into the case.

However, the defendant made no objection or motion at or about the time this testimony entered the case. It appears rather that she waited until the next day before requesting a mistrial.

During the interim, other witnesses had testified, and the plaintiff had moved for a mistrial. If the defendant considered the objectionable testimony about insurance to be prejudicial, she was afforded an opportunity to immediately join in the plaintiff's motion for a mistrial, but failed at the time to do so.

Ordinarily, an objection to incompetent and improper testimony must be made with reasonable promptness (52

Ohio Jurisprudence 2d 569, Section 81), and, in line with this general rule, a motion for a mistrial because of a reference to insurance must be seasonably made. *Dierks.* v. *Persons,* 6 Ohio Law Abs. 638; 4 A. L. R. 2d 820. Where a party elects to ignore an inadvertent reference to insurance and proceeds at some length with the trial of the case, he must be deemed to have waived any objection to the incompetent evidence. See 1 A. L. R. 2d 423 (Later Case Service for 4 A. L. R. 2d).

In the present case, the defendant not only waited until after other critical testimony had been presented, but also passed up an opportunity to join in a motion by the plaintiff for a mistrial, before asserting her objection to the improper evidence.

Under such circumstances, we cannot say that the trial court abused its discretion in overruling the defendant's subsequent motion for a mistrial. The first assignment of error is overruled.

The second and third assignments of error are closely related and pertain to a claimed "error of the court in permitting the plaintiff to amend his petition at the conclusion of the plaintiff's case to conform to the evidence."

The petition alleged that plaintiff "was walking south along the west side of College Street in the city of Piqua, Ohio, approximately twenty (20) feet south of the intersection of Young Street," whereas the plaintiff's evidence tends to show that he was walking from east to west across College Street at the intersection of Young and College Streets when struck by the defendant's vehicle.

Section 2317.49, Revised Code, provides in part as follows:

"No variance between the allegation in a pleading and the proof is material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. When it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court. * * *."

The variance between the plaintiff's pleading and his

proof became apparent during the early stages of the trial in the present case, but the defendant made no formal objection to the evidence on this ground until after the conclusion of the plaintiff's case.

In fact, the defendant was called by the plaintiff for cross-examination at the very outset of the trial, and her general observations are consistent with subsequent testimony presented by Gates that he was actually crossing College Street at the time of the accident. Her own testimony, when coupled with the failure to object or to move for a continuance, militates against her subsequent contention that she was surprised and misled in maintaining the action.

Ordinarily, "where a pleading is susceptible of an amendment and the pleader is willing to make an amendment thereto to conform to the proof, it is within the sound discretion of the court to overrule a motion for a directed verdict and permit an amendment to a pleading for that purpose." *Kauffman* v. *Schauer,* 121 Ohio St. 478. And in the absence of any affirmative showing that a party was misled to his prejudice by variance, the court is not authorized to dismiss the action. 43 Ohio Jurisprudence 2d 384, Section 361.

In this regard, the present record fails to disclose an abuse of discretion on the part of the trial court. Hence, the second and third assignments of error must be overruled.

The fourth assignment of error, which pertains to the trial court's definition of "crosswalk" in the general charge, is likewise without merit and will be overruled. In fact, the variation between the court's definition of "crosswalk" and the statutory definition of the term, if noticeable at all, tends to favor the defendant upon the facts of the present case.

For her fifth assignment of error, the defendant relies upon the overruling of her motion for a directed verdict at the close of all the evidence.

The evidence in this particular case produced a num-

ber of subordinate factual issues which have a distinct, and significant bearing upon the principal issues of negli-gence, contributory negligence and proximate cause.

Upon the issue of negligence, the evidence shows, and a jury could reasonably find, that the defendant observed a "dark form" at the east edge on the unpaved portion of College Street when she was more than a block away from the scene of the accident; that she realized that the plain-tiff was crossing the street when she was one hundred-twenty feet from the point of impact; that the plaintiff was within ten feet of the west curb and had traversed College Street for a distance of thirty feet when struck by defendant's vehicle; that the defendant was driving at a speed of approximately thirty miles per hour; that she did not sound her horn or give a warning; that she did not di-vert her car; that College Street was relatively clear of vehicular traffic; and that the intersection was well light-ed.

Reasonable minds might readily differ upon the issue of negligence. In fact, a detailed analysis of the defendant's testimony, without more, discloses sufficient evidence to take the case to the jury upon this issue.

The evidence upon the issue of contributory negligence produces greater difficulty. In this regard, it is perhaps significant that the plaintiff, Gates, was sixty-six years old and severely handicapped at the time of the trial. He had experienced no formal schooling whatsoever, and appar-ently encountered substantial difficulty in understanding and answering some of the questions propounded to him by counsel for both parties.

On three different occasions, he testified that he cross-ed College Street at the corner of the intersection. Then, upon cross-examination by the defendant, he stated that the accident happened twenty feet south of the intersection.

The defendant contends that the plaintiff is conclusive-ly bound by the latter statement, thus rendering inappli-cable the provision of Section 4511.46, Revised Code, which provides that the operator of a vehicle shall yield the right

of way to a pedestrian lawfully crossing the roadway within any crosswalk. To the contrary, the plaintiff argues that the witness did not understand that the place where the "accident happened" was the "point of impact" and points to certain physical evidence presented by the investigating officer, which suggests that the plaintiff was moved some distance from the crosswalk by the force of the defendant's vehicle.

Upon the issue of contributory negligence, the defendant also refers to testimony of the plaintiff that he was "looking at all times to the north" as the vehicle was approaching, and applies the rule that a person is presumed to have seen that which was plainly visible. This testimony of the plaintiff is likewise tempered with considerable conflict. In fact, the defendant herself observed that he was "looking straight west" with his head down.

In our opinion, the isolated statement of the plaintiff on cross-examination, that the accident happened twenty feet south of the intersection, when viewed in context and considered with all other evidence presented at the trial, was not conclusive in establishing the point of impact. Upon all the evidence, reasonable minds could differ upon this issue, and this should be the ultimate test in deciding the question of whether a subversive statement may be characterized as conclusive. See *Bowlin* v. *Black & White Cab Co.*, 7 Ohio App. 2d 133.

If the jury found that the plaintiff was in, or reasonably close to, the crosswalk when struck by the defendant's vehicle, the related argument that the plaintiff was conclusively bound by his testimony that he was "looking at all times to the north" loses much of its thrust because, regardless of where the plaintiff was looking under such circumstances, the defendant was under a statutory duty to yield the right of way. Unlike many of the cited cases, neither of the parties to this action was chargeable with knowledge of a static condition. On the contrary, the parties were moving and, as we appreciate the evidence, it is entirely possible that each of the parties presumed that the other would defer the right of way.

But aside from any statutory duty, and assuming that the plaintiff did not use ordinary care for his own safety, we are nonetheless faced with the issue of proximate cause under the facts and circumstances of this case.

As heretofore indicated, the defendant saw a "dark form" in the street when she was a block from the intersection. She observed the plaintiff "for about a block" on a "well lighted" and "very deserted" street. She noticed that he was crossing the street when still one hundred-twenty feet away.

The investigating officer, DeBrosse, testified that the defendant's vehicle was six feet from the west curb and showed skid marks of fifty-four feet in a "continuous straight line."

After the accident, the plaintiff was partially on the curb and partially in the gutter on the west side of the street.

On the evidence presented, the question of proximate cause was clearly one for the jury's consideration. See *Glasco* v. *Mendelman,* 143 Ohio St. 649; *Mansperger* v. *Ehrnfield,* 59 Ohio App. 74; *Standard Motor Sales Co.* v. *Miller,* 30 Ohio App. 7. See, generally, 39 Ohio Jurisprudence 2d 661, Section 107; *Green* v. *Castronova,* 9 Ohio App. 2d 156. The fifth assignment of error will be overruled.

The sixth, seventh, eighth, and ninth assignments of error, which pertain to matters already considered under the fifth assignment of error, will likewise be overruled.

We find no error prejudicial to the substantial rights of the defendant and the judgment of the trial court must be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.